## JOHN SEQUENZIA ET AL. *v.* GUERRIERI MASONRY, INC., ET AL.
### (AC 29308)

Flynn, C. J., and DiPentima and Dupont, Js.

Argued October 22, 2008—officially released March 31, 2009

*William J. Melley III*, for the appellant (named defendant).

*Gregory M. Cantwell*, for the appellee (named plaintiff).

*Opinion*

FLYNN, C. J. The defendant Guerrieri Masonry, Inc., appeals from the judgment of the trial court, following a jury verdict, in favor of the plaintiff John Sequenzia.[1] Although the defendant's brief primarily focuses on the findings of the court as set forth in the court's postverdict memorandum of decision on the defendant's posttrial motions, rather than focusing on the merits of the defendant's motion for judgment notwithstanding the verdict and the defendant's motion for a new trial, and is inadequate in that regard, we do agree with its claim that it was entitled to a new trial after the court charged the jury on a specification of common-law negligence for which there had been no evidence. Accordingly, we reverse the judgment of the trial court.

The following facts reasonably could have been found by the jury. The town of Glastonbury contracted with Hodess Building Company (Hodess) to construct an

---

[1] Initially, John Sequenzia brought this action against Guerrieri Masonry, Inc., and Hodess Building Company (Hodess). Hodess filed a cross complaint against Guerrieri Masonry, Inc. Prior to trial, Hodess and John Sequenzia reached a settlement, and John Sequenzia withdrew his claim against Hodess. Hodess also withdrew its cross complaint against Guerrieri Masonry, Inc. Diane M. Sequenzia also had brought claims for loss of consortium against Guerrieri Masonry, Inc., and Hodess; a nonsuit, however, was entered on those claims. Wethersfield Building Supply, the employer of John Sequenzia, intervened in the case but did not participate in the trial because it had reached an agreement with John Sequenzia. Accordingly, the only parties remaining in the case are John Sequenzia and Guerrieri Masonry, Inc., to whom we refer in this opinion as the plaintiff and the defendant, respectively.

addition to an assisted living building. Hodess, which acted as the general contractor for the job, entered into a subcontract with the defendant to perform masonry work on the site. On the morning of November 14, 2003, the plaintiff arrived on site to deliver a truckload of bricks. It was a windy day. A Hodess employee pointed to the area where the plaintiff should deliver the bricks, and the plaintiff moved his truck to that area. Shortly thereafter, Corrado Guerrieri, the owner of the defendant, arrived on site and, seeing that there were power lines nearby, suggested that the plaintiff move his truck because it was too close to the power lines. Despite knowing that there was a sign posted on his truck that stated "look up keep boom 15 feet from power lines," the plaintiff responded that he could make the delivery from that location. Using a boom attached to the truck, which was operated through a control box, the plaintiff began to remove the pallets of bricks from the truck, but, during the process, the boom came into contact with the power lines, shocking him and causing very serious injuries. Guerrieri immediately grabbed the control box and pulled it from the plaintiff's hand. There was evidence that the plaintiff's injuries were painful, disfiguring and disabling.

The plaintiff brought this action against Hodess and the defendant. Prior to trial, Hodess and the plaintiff reached a settlement, and the plaintiff withdrew its claims against Hodess. The case between the plaintiff and the defendant proceeded to be tried on a single count of common-law negligence. The court charged the jury on two specifications of negligence, as alleged in the complaint, one of which was a failure to warn.[2]

[2] The complaint originally alleged four specifications of negligence. By agreement, two of those specifications were charged out. This left two specifications intact: the failure to warn and an allegation that the defendant directed the plaintiff to operate his truck in an area that did not provide adequate clearance or protection.

The jury returned a verdict in favor of the plaintiff, finding the defendant to be 30 percent negligent, Hodess 25 percent negligent and the plaintiff 45 percent negligent.[3] Following the jury's verdict, the defendant renewed its earlier motion for a directed verdict and filed motions for judgment notwithstanding the verdict and for a new trial, arguing, in part, that the court improperly had charged the jury on the failure to warn specification of common-law negligence and that there was no evidence to support such a charge.[4] The motions were denied. After reviewing the record and the briefs in this case, we have determined, in light of what has been raised before us on appeal, that the dispositive issue is whether the defendant was entitled to a new trial after the court conceded that it improperly had charged the jury on a specification of negligence for which there was no evidence. Agreeing with the court that there was no evidence to support the charge, we conclude that the defendant is entitled to a new trial.

"[O]ur standard of review of the trial court's denial of a motion for a new trial is limited to a determination of whether, by such denial, the court abused its discretion. . . . As a reviewing court considering the trial court's decision granting or denying a motion for a new trial, we must be mindful of the trial judge's superior opportunity to assess the proceedings over which he or she . . . personally [has] presided." (Citation omitted; internal quotation marks omitted.) *Munson* v. *United Technologies Corp.*, 28 Conn. App. 184, 194–95, 609 A.2d 1066 (1992).

In the defendant's motion for a new trial, it claimed, among other things, that the court improperly had

[3] Although Hodess was a released or settled party, the court charged the jury as to the claims against Hodess, explaining that it was doing so in accordance with General Statutes § 52-572h. The propriety of this is not before us on appeal.

[4] The defendant also filed a motion to reduce the verdict, which the court granted. That motion is not relevant to the issues on appeal.

charged the jury on the failure to warn specification of negligence. The defendant argued in relevant part: "The plaintiff testified at length regarding his knowledge of the existence of the power lines near the site where he was to work. The plaintiff knew that striking the power lines with his truck would cause severe injury. . . . It is abundantly clear that the plaintiff knew and appreciated the danger. Where the plaintiff's own testimony established his awareness of the precise danger that caused his injuries and his testimony was uncontroverted, the court erred in submitting to the jury the issue of whether the defendant had a duty to warn the plaintiff." In its postverdict memorandum of decision, the court explained: "Regarding the failure of the court to exclude from its charge to the jury the issue of the duty to warn . . . the court did err in charging the jury regarding this issue because there was no evidence to support such a claim. However, since this was not the sole basis of the plaintiff's claim, and the court charged on alternative grounds on which the defendant could be held liable, this does not warrant a new trial." We conclude that the court improperly denied the defendant's motion for a new trial on this ground.

The plaintiff's complaint sounded in one cause of action, common-law negligence. Although there were submitted to the jury two different specifications of negligent conduct, both of these were in support of that single cause of action. See *Green* v. *H.N.S. Management Co.*, 91 Conn. App. 751, 764, 881 A.2d 1072 (2005) (where more than one specification of negligence pleaded, defendant still entitled to new trial where court charged on specification not supported by evidence), cert. denied, 277 Conn. 909, 894 A.2d 990 (2006).

In his complaint, the plaintiff had alleged, in part, that the defendant "had control and knowledge of the area of the site where the [p]laintiff was injured yet failed to warn the [p]laintiff of the danger of using a

boom under the conditions then and there existing at the site . . . ." Although the plaintiff's memory of the day of his accident was impaired, there were certain things that he did remember. The plaintiff testified at trial that on the day of the accident, he waited outside of the gate for someone to let him onto the site and that it was a windy day. He also remembered that after getting onto the site, he waited for Guerrieri to arrive. The plaintiff testified that he was aware of the sticker on his vehicle, which stated that the boom must be kept fifteen feet from power lines, but that he routinely made deliveries within fifteen feet of power lines because the wires "are right there" at the work sites. He stated that it was his responsibility to park the truck and to offload the product and that he had nearly twenty years of experience, making as many as twelve deliveries in one day. He averaged approximately three to five deliveries on a normal day, however, which meant that he made 1000 or more deliveries each year for almost twenty years using this same vehicle or a vehicle very similar to it. He further testified that he had a great deal of experience with the vehicle that he operated on the day of the accident, and, when asked by defense counsel: "So when it came time to operate—not only the vehicle on the roadway, but the vehicle in terms of what it was designed to do, that is unload bricks at construction sites, is it fair to say that you had a great deal of knowledge, experience and expertise," he responded, "one hundred percent." The plaintiff testified that he worked in all types of weather conditions, that he took those conditions into consideration when he made his deliveries and that he would not expect others to tell him about the weather conditions or what effect they might have on his ability to do his job. He testified that he knew the power lines were "adjacent to the public road," running right along this construction site and that he could see them while he was

unloading the bricks. He unloaded between five and twelve pallets of bricks without incident before the accident occurred. He also testified that it was common sense that if he were holding onto something metal and it came into contact with power lines, he would get hurt and that that is what happened here. He stated that he was the one holding the box, operating the boom and in control of the "whole operation."

"The law is clear that [a] possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. . . . In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover. . . . *Morin* v. *Bell Court Condominium Assn.*, 223 Conn. 323, 327, 612 A.2d 1197 (1992). The duty to warn, however, does not arise if an invitee already has actual knowledge of the dangerous condition. *Fleming* v. *Garnett*, 231 Conn. 77, 84, 646 A.2d 1308 (1994)." (Internal quotation marks omitted.) *Gargano* v. *Azpiri*, 110 Conn. App. 502, 508, 955 A.2d 593 (2008).

In *Gargano*, the plaintiff, who had been injured falling through a hole in a floor and was pursuing a negligence claim that included the specification of failure to warn, had testified during her deposition that she was aware of the large opening in the floor and that she had been told that the opening was for a spiral staircase. Id. She also had testified that she could see the opening in the floor because of a generator in use upstairs, which produced sufficient light. Id. In short, there was no question that the plaintiff had testified that she knew the hole was there. On the basis of these facts, this court agreed with the trial court's conclusion that, as a matter of law, the defendant did not owe to the plaintiff a legal duty to warn because the condition was obvious and the plaintiff clearly had knowledge of its existence. Id., 509.

In *Green* v. *H.N.S. Management Co.*, supra, 91 Conn. App. 757, this court considered whether it was reversible error for the trial court to have charged the jury on the duty to warn specification of negligence when there had been no evidence that a bus driver had notice of an alleged dangerous condition caused by snow and ice on the aisle of the bus, which would have given rise to a duty to warn the plaintiff. Although the plaintiff asserted that the court's improper inclusion of the duty to warn specification of negligence was not reversible error because other pleaded specifications of negligence could have been found by the jury, we concluded that the defendant was entitled to a new trial because the jury could have based its verdict on the unsupported specification of negligence, i.e., the duty to warn, which was not supported by the evidence. Id., 764.

A review of the record in the present case along with our relevant case law leads us to the conclusion that the court improperly denied the defendant's motion for a new trial after charging on an unsupported specification of negligence, the duty to warn. The testimony of the plaintiff clearly demonstrated that he had knowledge of the dangerous condition and that the danger was open and obvious, thus eliminating any alleged duty to warn on the part of the defendant.[5] Absent such a duty to warn, it was improper for the court to submit to the jury that specification of negligence. "[T]he trial court has a duty not to submit any issue to the jury upon which the evidence would not support a finding. . . . Accordingly, the right to a jury instruction is limited to those theories for which there is any foundation in the evidence." (Internal quotation marks omitted.) *Bostic* v. *Soucy*, 82 Conn. App. 356, 359, 844 A.2d 878,

---

[5] In addition to the plaintiff's testimony, Guerrieri testified that he specifically asked the plaintiff to move his truck farther away from the power lines to ensure his safety, but that the plaintiff refused. The court credited this testimony in its postverdict memorandum of decision.

cert. denied, 269 Conn. 912, 852 A.2d 738 (2004). "It is error to submit a specification of negligence to the jury in respect to which no evidence has been offered." *Mack* v. *Perzanowski*, 172 Conn. 310, 313, 374 A.2d 236 (1977). Because it is possible that the jury could have based its verdict on a specification of negligence that was not supported by the evidence, we agree with the defendant's claim that it is entitled to a new trial.

The judgment is reversed and the case is remanded for a new trial or such other further proceedings as may be warranted not inconsistent with this opinion.

In this opinion the other judges concurred.