BONNIE DUART *v.* DEPARTMENT OF CORRECTION
(AC 29994)

Bishop, Harper and Schaller, Js.

Argued April 28—officially released September 1, 2009

*Leon M. Rosenblatt*, with whom was *Lynn M. Mahoney*, for the appellant (plaintiff).

*Jane B. Emons*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney

general, and *Antoria D. Howard* and *Margaret Q. Chapple*, assistant attorneys general, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Bonnie Duart, appeals from the judgment of the trial court rendered after it denied her motion for a new trial, in which she alleged that the defendant, the department of correction, engaged in discovery misconduct. The plaintiff claims on appeal that the court, in denying the motion, relied on an improper standard when it concluded that she was required to show that the outcome of the trial would have been different without the defendant's alleged discovery misconduct.[1]

The following facts and procedural history are relevant to the plaintiff's appeal. This case arises out of an employment dispute between the plaintiff, a lieutenant with the department of correction, and the defendant. On May 28, 2002, the plaintiff filed an amended complaint against the defendant. In count one, she alleged that the defendant discriminated against her on the basis of her gender and sexual orientation. In count two, the plaintiff alleged that the defendant retaliated against her after she filed a complaint of discrimination with the commission on human rights and opportunities (commission).[2]

---

[1] The plaintiff also claims on appeal that (1) the defendant engaged in discovery misconduct that was knowing and deliberate, "thus creating an inference that [she] is entitled to a new trial," and (2) she was "denied access to discovery that would have been valuable trial evidence or a tool for obtaining meaningful discovery . . . ." These claims are either encompassed within the claim that we resolve in this opinion or are directly within the scope of discovery misconduct as set out in *Anderson* v. *Cryovac, Inc.*, 862 F.2d 910 (1st Cir. 1988), which we decline to follow. For those reasons, we do not reach these claims.

[2] The plaintiff also alleged that she was discriminated against because of her physical disability, namely, endometriosis, but withdrew that claim prior to trial.

The plaintiff alleged the following facts in support of her claims. On October 7, 1999, the plaintiff's supervisor, Duane Kelley, wrote an incident report in which he alleged that the plaintiff was dating another female correction officer, Cynthia Bruner, who was in the same chain of command as the plaintiff.[3] Kelley published this incident report to the warden, Gurukaur Khalsa. Following the publication of the incident report, both Kelley and Khalsa began making false or grossly exaggerated allegations against the plaintiff. They harassed her about her hair, despite her continual compliance with the rules governing hair length, and, at one point, Khalsa stated to the plaintiff that if she did not know how to put her hair up properly, she should get one of her many women friends to help her. The plaintiff understood this statement to be in reference to her sexual orientation. In addition, the plaintiff was accused falsely of being disrespectful to Kelley and was transferred to the third shift despite a medical condition that prevented her from working that particular shift.

On April 24, 2000, the plaintiff filed her first complaint of discrimination with the commission and the federal Equal Employment Opportunity Commission. After she filed the complaint, the discrimination and harassment by Kelley and Khalsa became even more severe, as evidenced by the following events: (1) the plaintiff was suspended for five days under the pretext of not complying with the hair regulations and for supposed disrespectful behavior to Kelley; (2) the plaintiff received her first unsatisfactory evaluation and her pay raise was taken away; (3) the plaintiff was accused falsely of failing to follow procedures regarding sick days, scheduling training and storing facility keys; (4) the plaintiff was denied vacation time; (5) the plaintiff was demoted from her position of lieutenant; and (6) the

---

[3] Romantic relationships between two people in the same chain of command are forbidden pursuant to the defendant's administrative directive 2.17.

plaintiff was transferred by another supervisor, Wayne Valade, to a different correctional facility, which resulted in a decrease in pay, authority and prestige. The plaintiff also alleged that both Valade and Kelley had a practice of harassing female officers.

The case proceeded to a jury trial on July 14, 2004. After the trial, on July 27, 2004, the jury returned a verdict in favor of the defendant. On August 6, 2004, before judgment was rendered on the verdict, the plaintiff filed a motion in arrest of judgment, to set aside the verdict and for a new trial, alleging newly discovered evidence and interference with a witness. The defendant opposed the motion, and the court heard testimony and oral argument on October 14, 2004.

On June 5, 2007, the plaintiff filed a supplemental memorandum of law, focusing the basis of her request for a new trial on newly discovered evidence and discovery misconduct. Specifically, the plaintiff argued that she discovered after the trial that two other female correction officers, Catherine Osten and Lisa Jackson, had filed discrimination complaints against Kelley and Valade. The defendant had not disclosed this information despite the plaintiff's request during pretrial discovery that it produce the entire personnel files of Kelley and Valade and any complaints filed against them. The plaintiff contended that these documents should have been disclosed during discovery because they showed that both Valade and Kelley had a history of badgering and retaliating against females, and the information could have been used to test their credibility at trial. The plaintiff also argued that the defendant committed discovery misconduct when it intentionally withheld an anonymous note, which she characterized as "a documentary bombshell," until the last day of evidence, despite her request during discovery that the defendant produce her personnel file. The plaintiff asserted that the note "accused [her] of 'hanging out' with Bruner in

the lieutenant's office or in the staff lounge; spending evenings with her; [and] leaving work early to 'comfort' her. It said that [the plaintiff] wore Bruner's high school ring, with a pink stone, and that they had 'matching hickies.' It demanded that [administrative directive] 2.17 be enforced . . . ." The plaintiff argued that it was not until the anonymous note was revealed that she learned that her sexual orientation and relationship with Bruner was the central issue of the case. Until that point, because she had believed that compliance with hair regulations was the principal problem, she had directed her discovery and evidence at that issue.

The defendant filed a memorandum of law in opposition to the plaintiff's supplemental memorandum, essentially arguing that the plaintiff was not entitled to a new trial because it did not intentionally conceal the aforementioned documents from her and that the production of those documents would not have changed the result of the trial. The court heard additional argument on October 17, 2007. On May 13, 2008, the court denied the plaintiff's motion for a new trial and rendered judgment on the verdict. In its memorandum of decision, the court concluded that, although the discrimination complaints should have been produced by the defendant, they did not entitle the plaintiff to a new trial because they were cumulative of other evidence presented, and, therefore, it was unlikely that they would have produced a different result. The court also concluded that, because the anonymous note's existence and contents were known to the plaintiff during the entire "pendency" of the case, and discrimination on the basis of sexual orientation was at the core of the trial, the note was not such that it would bring "success in its wake" in accordance with *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Superline Transportation Co.*, 953 F.2d 17, 21 (1st Cir. 1992). The court, therefore, determined that

the "defendant's failure to provide a copy of the actual note, even if brought about by discovery misconduct . . . did not so taint the process as to in all equity warrant a new trial."

The plaintiff appealed to this court on June 2, 2008, following the denial of her motion for a new trial. In her brief, the plaintiff states that she is "not pressing in this appeal her argument concerning newly discovered evidence. She is pressing her claim that the defendant's pretrial discovery [misconduct] so perverted the process that she is entitled to a new trial." The crux of the plaintiff's argument is that the court should not have applied the "result altering" standard of *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59,* to her claim of discovery misconduct because that case involved a claim of newly discovered evidence. The plaintiff contends that the correct standard to be applied to a claim of discovery misconduct is whether she has demonstrated that there is clear and convincing evidence of the misconduct and that it "substantially interfered with her ability to fully and fairly prepare for, and proceed, at trial," in accordance with *Anderson* v. *Cryovac, Inc.,* 862 F.2d 910, 926 (1st Cir. 1988). The plaintiff maintains that *Anderson* should be relied on because there is no standard in Connecticut for a motion for a new trial that is based on an allegation of discovery misconduct.

Typically "[o]ur standard of review of the trial court's denial of a motion for a new trial is limited to a determination of whether, by such denial, the court abused its discretion." (Internal quotation marks omitted.) *Sequenzia* v. *Guerrieri Masonry, Inc.,* 113 Conn. App. 448, 451, 967 A.2d 508, cert. granted on other grounds, 292 Conn. 903, 971 A.2d 689 (2009). Nevertheless, "[a] court's determination of the proper legal standard . . . is a question of law subject to plenary review." *Fish* v. *Fish,* 90 Conn. App. 744, 754, 881 A.2d 342 (2005), rev'd

in part on other grounds, 285 Conn. 24, 939 A.2d 1040 (2008). "If a court applies a different standard, its judgment is subject to reversal." *Moss* v. *Foster*, 96 Conn. App. 369, 375, 900 A.2d 548 (2006).

"[F]ederal rules of civil procedure and the federal court's interpretations thereon are not binding upon the state courts . . . ." *Mac's Car City, Inc.* v. *American National Bank*, 205 Conn. 255, 260, 532 A.2d 1302 (1987). Federal case law, particularly decisions of the United States Court of Appeals for the Second Circuit; see *Turner* v. *Frowein*, 253 Conn. 312, 341, 752 A.2d 955 (2000); can be persuasive in the absence of state appellate authority, which the plaintiff asserts to be the situation in the present case. Decisional authority from this state refutes the plaintiff's assertion. At the outset, however, because both parties in their respective briefs and in oral argument to this court extensively examined the decisions of the United States Court of Appeals for the First Circuit in *Anderson* and *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59*, and, more importantly, because the trial court relied on the latter case in denying the plaintiff's motion for a new trial, we will briefly discuss those cases and the federal rule of civil procedure that is central to both.

Rule 60 (b) of the Federal Rules of Civil Procedure provides in relevant part that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59 (b)[4] [of the Federal Rules of Civil Procedure]; (3) fraud (whether previously called

---

[4] Rule 59 (b) of the Federal Rules of Civil Procedure provides: "Time to File a Motion for a New Trial. A motion for a new trial must be filed no later than 10 days after the entry of judgment."

intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."

In *Anderson*, the plaintiff moved for a new trial under rule 60 (b) (3), alleging that the defendant engaged in discovery misconduct when it failed to produce or to disclose certain materials. *Anderson* v. *Cryovac, Inc.*, supra, 862 F.2d 923. The court concluded that this type of behavior "can constitute 'misconduct' within the purview of this subsection." Id. The court then set out the following standard: "[I]n motions for a new trial under the misconduct prong of [r]ule 60 (b) (3), the movant must show the opponent's misconduct by clear and convincing evidence. Next, the moving party must show that the misconduct substantially interfered with its ability fully and fairly to prepare for, and proceed at, trial."[5] Id., 926.

In *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Superline Transportation Co.*, supra, 953 F.2d 18, the plaintiffs "attempted to resurrect [their] case from its own ashes" by invoking rule 60 (b) (6), the catchall provision, alleging that they did not

---

[5] The court further concluded: "This burden may be shouldered either by establishing the material's likely worth as trial evidence or by elucidating its value as a tool for obtaining meaningful discovery. The burden can also be met by presumption or inference, if the movant can successfully demonstrate that the misconduct was knowing or deliberate. Once a presumption of substantial interference arises, it can alone carry the day, unless defeated by a clear and convincing demonstration that the consequences of the misconduct were nugacious. Alternatively, if unaided by a presumption— that is, if the movant is unable to prove that the misconduct was knowing or deliberate—it may still prevail as long as it proves by a preponderance of the evidence that the nondisclosure worked some substantial interference with the full and fair preparation or presentation of the case." *Anderson* v. *Cryovac, Inc.*, supra, 862 F.2d 926.

receive the defendants' motion for summary judgment or notice that the court had granted it. The court stated: "[W]hile a movant, in order to set aside a judgment, need not establish that it possesses an ironclad claim or defense which will guarantee success at trial, it must as least establish that it possesses a potentially meritorious claim or defense which, if proven, will bring success in its wake. Such a showing requires more than an unsubstantiated boast. Even an allegation that a meritorious claim exists, if the allegation is purely conclusory, will not suffice to satisfy the precondition to [r]ule 60 (b) relief. . . . In the absence of any cognizable representation that its underlying suit possessed merit, the [named plaintiff] was not entitled to favorable consideration of its [r]ule 60 (b) (6) motion." Id., 21.

The plaintiff is correct in her contention that *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59*, did not supersede *Anderson*. The First Circuit, in *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59*, clarified a basic precondition for a party bringing a motion under rule 60 (b); it did not change the standard, as set out in *Anderson*, for reviewing motions to set aside a judgment that are based on fraud, misrepresentation or misconduct under rule 60 (b) (3). That standard was recently affirmed by the First Circuit in *Karak* v. *Bursaw Oil Corp.*, 288 F.3d 15, 20–21 (1st Cir. 2002), and our review of case law from other federal circuit courts of appeal reveals that it remains the widely accepted standard. See *Greyhound Lines, Inc.* v. *Wade*, 485 F.3d 1032, 1036 (8th Cir. 2007); *Zurich North America* v. *Matrix Service, Inc.*, 426 F.3d 1281, 1290 (10th Cir. 2005); *Hesling* v. *CSX Transportation, Inc.*, 396 F.3d 632, 641 (5th Cir. 2005); *State Street Bank & Trust Co.* v. *Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004), cert. denied, 543 U.S. 1177, 125 S. Ct. 1309, 161 L. Ed. 2d 161 (2005); *Bethel* v. *McAllister Bros., Inc.*, 81 F.3d 376, 384 (3d Cir. 1996);

*Schultz* v. *Butcher*, 24 F.3d 626, 630 (4th Cir. 1994); *Jones* v. *Aero/Chem Corp.*, 921 F.2d 875, 878–79 (9th Cir. 1990).

The plaintiff, however, is incorrect in her contention that *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59*, was "a case about newly discovered evidence [in which] the question [was] whether, if the movant had the [newly discovered] evidence, the results would have been different." The plaintiffs in *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59*, did not invoke rule 60 (b) (2), which is the rule governing the ground of newly discovered evidence. Nonetheless, it is true that under rule 60 (b) (2), the movant must show, among other things, that "the evidence is of such a nature that it would probably *change the result* were a new trial to be granted."[6] (Emphasis added.) *United States Steel* v. *M. DeMatteo Construction Co.*, 315 F.3d 43, 52 (1st Cir. 2002); see also *Greyhound Lines, Inc.* v. *Wade*, supra, 485 F.3d 1036; *Zurich North America* v. *Matrix Service, Inc.*, supra, 426 F.3d 1290; *Hesling* v. *CSX Transportation, Inc.*, supra, 396 F.3d 639; *United States* v. *International Brotherhood of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001). "Unlike [r]ule 60 (b) [3], 60 (b) [2] . . . [requires] that the information withheld be such that it can alter the outcome of the case." (Internal quotation marks omitted.) *Hesling* v. *CSX Transportation, Inc.*, supra, 641.

Because the plaintiff, in this appeal, is pressing her discovery misconduct claim, and not her newly discovered evidence claim, we can appreciate why she argues that the court should have applied the standard of rule

---

[6] The movant must also demonstrate that "(1) the evidence has been discovered since the trial; (2) the evidence could not by due diligence have been discovered earlier by the movant; [and] (3) the evidence is not merely cumulative or impeaching . . . ." *United States Steel* v. *M. DeMatteo Construction Co.*, 315 F.3d 43, 52 (1st Cir. 2002).

60 (b) (3), which is that the misconduct "substantially interfere[d] with [the] ability fully and fairly to prepare for, and proceed at, trial"; *Anderson* v. *Cryovac, Inc.*, supra, 862 F.2d 926; as opposed to the "result altering" standard of rule 60 (b) (2). Yet, as noted by the defendant, our Supreme Court has established a standard for claims of fraud, and, for the reasons we will discuss, we believe that it should also be applied to claims of discovery misconduct, whether wilful or negligent.

In *Varley* v. *Varley*, 180 Conn. 1, 4, 428 A.2d 317 (1980), our Supreme Court imposed four requirements on those seeking relief from a judgment secured by fraud: "(1) There must have been no laches or unreasonable delay by the injured party after fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud.[7] (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different."[8] See also *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 107, 952 A.2d 1 (2008); *Billington* v. *Billington*, 220 Conn. 212, 218, 595 A.2d 1377 (1991); *Jucker* v. *Jucker*, 190 Conn. 674, 677, 461 A.2d 1384 (1983). The court, in *Varley*, explained: "Where an unsuccessful party has been prevented, by fraud or deception, from exhibiting fully his case . . . a new suit may be sustained to set aside and annul the former judgment and open the case for a new and fair hearing." *Varley* v. *Varley*, supra, 2.

[7] In *Billington* v. *Billington*, 220 Conn. 212, 222, 595 A.2d 1377 (1991), our Supreme Court abandoned the diligence requirement in the marital litigation context.

[8] Notably, the standard that governs the granting of a petition for a new trial based on newly discovered evidence is very similar. The petitioner must demonstrate, by a preponderance of the evidence, that: "(1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial." *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987).

Although *Varley* spoke in terms of fraud rather than misconduct, we see no reason why those concepts should not be categorized together, thereby sharing the same standard, as is the case in federal law. See Fed. R. Civ. P. 60 (b) (3) (court may relieve party for "fraud . . . misrepresentation, or misconduct by an opposing party"); *Anderson* v. *Cryovac, Inc.*, supra, 862 F.2d 923 ("the moving party must demonstrate misconduct—*like fraud* or misrepresentation—by clear and convincing evidence, and must then show that the misconduct foreclosed full and fair preparation or presentation of its case" [emphasis added]). The distinction between fraud and misconduct is difficult to define. Misconduct is a subset of fraud, where wilful, and less culpable when negligent. In *Anderson*, the court attempted to develop a definition but could only come up with the pronouncement that relief on the ground of misconduct is justified not only when there is an "evil, innocent, or careless, purpose," but also when there is an accidental omission, "elsewise [misconduct] would be pleonastic, because fraud . . . would likely subsume it." (Internal quotation marks omitted.) Id. The court did not discuss how to distinguish between fraud and misconduct when an accidental omission is not the conduct in question. The court's statement, in fact, indicates that in this instance, fraud would likely subsume misconduct.

Unless we, unlike the federal courts, choose to undertake the arduous task of classifying each wrongful act or omission as either fraud or misconduct, it is prudent that the two share the same standard. Otherwise, if we were to adopt the more lenient standard of *Anderson* for misconduct claims, and yet maintain the more demanding standard of *Varley* for fraud claims, parties would be likely to frame their complaints in terms of misconduct rather than fraud. Courts would then be compelled to scrutinize the behavior complained of to determine its *true* nature, whether misconduct or fraud,

an uncertain and time-consuming process. Therefore, we find persuasive the decision of the federal courts to apply the same standard to both fraud and misconduct claims.[9]

---

[9] We note that rule 60 (d) of the Federal Rules of Civil Procedure also provides that a court may vacate a judgment when it determines that a party has perpetrated a "fraud on the court." Fed. R. Civ. P. 60 (d) (3). The "fraud on the court" doctrine is materially different from the fraud or misconduct on an adverse party referred to in rule 60 (b) (3). As the United States Court of Appeals for the Fourth Circuit explained: "The federal courts that have struggled with the definition of 'fraud on the court' . . . have found such a definition elusive . . . but have generally agreed that the concept should be construed very narrowly . . . . The principal concern motivating narrow construction is that the otherwise nebulous concept of 'fraud on the court' could easily overwhelm the specific provision of [rule] 60 (b) (3) and its time limitation and thereby subvert the balance of equities contained in the [r]ule. . . . Not all fraud is 'fraud on the court.' " (Citations omitted.) *Great Coastal Express, Inc.* v. *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 675 F.2d 1349, 1356 (4th Cir. 1982), cert. denied, 459 U.S. 1128, 103 S. Ct. 764, 74 L. Ed. 2d 978 (1983).

" '[F]raud upon the court' as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication." *Gleason* v. *Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988). "[F]raud on the court must constitute egregious misconduct . . . such as bribery of a judge or jury or fabrication of evidence by counsel." (Internal quotation marks omitted.) *Herring* v. *United States*, 424 F.3d 384, 390 (3d Cir. 2005), cert. denied, 547 U.S. 1123, 126 S. Ct. 1909, 164 L. Ed. 2d 685 (2006). It "is not fraud between the parties or fraudulent documents, false statements or perjury." (Internal quotation marks omitted.) *Weese* v. *Schukman*, 98 F.3d 542, 552 (10th Cir. 1996). "When alleging a claim of fraud on the court, the plaintiff must show by clear and convincing evidence that there was fraud on the court, and all doubts must be resolved in favor of the finality of the judgment." Id.

In Connecticut, the distinction between "fraud on the court" and "fraud on an adverse party" has received little discussion. In *Billington* v. *Billington*, supra, 220 Conn. 224–25, the Supreme Court concluded that there exists a distinction between "fraud on the court" and "fraud on an adverse party" in the *marital litigation context*, in that "fraud on the court" is limited to instances in which "both parties join to conceal material information from the court." Id., 225. Once outside the marital context, however, the two concepts appear to receive similar treatment. In *Varley*, the defendant alleged that "the trial was tainted by (a) false testimony; (b) bribery; (c) misconduct of counsel; and (d) misconduct of the state referee." *Varley* v. *Varley*, supra, 180 Conn. 2 n.1.

Although these allegations befit the "fraud on the court" doctrine, at least according to federal definition, the *Varley* court referred only to the defendant's claim as that of fraud. In *Billington*, the court concluded that it was not "fraud on the court" but "fraud on an adverse party" when one

Additionally, fraud is often considered to consist of either the fabrication or *concealment* of evidence. See 2 Restatement (Second), Judgments § 70, comment (d), p. 183 (1982) (to obtain relief from fraud "it must be shown that the fabrication or concealment was a material basis for the judgment and was not merely cumulative"). In this case, the plaintiff has alleged that the defendant knowingly and deliberately concealed certain documents from her. Moreover, *Varley* describes fraud as deception that prevents a party from fully exhibiting his case. *Varley* v. *Varley*, supra, 180 Conn. 2; see also *Francis T. Zappone Co.* v. *Plymouth Commons Realty Group*, Superior Court, judicial district of Hartford, Docket No. CV-02-0820681-S (October 10, 2007) (*Sheldon, J.*) (intrinsic fraud is "fraud preventing the moving party from fully presenting his claim or defense at trial").[10] The plaintiff here argues that the defendant's deceptive concealment of the documents at issue prevented her from fully presenting her case.

Despite the fact that the court did not set out the standard established in *Varley* in its memorandum of decision, by concluding that the burden was on the plaintiff to show that the evidence allegedly concealed by the defendant through discovery misconduct would have to "bring success in its wake"; *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Superline Transportation Co.*, supra, 953 F.2d 21; or, in other words, that it be "result altering," the court effectively applied the correct standard. Moreover, when the court concluded that the plaintiff had failed to do so, it, in effect, concluded that the plaintiff's claim

party submitted a fraudulent affidavit with the intent to induce the other party to rely on it and that the moving party should be required to satisfy the limitations of *Varley*. *Billington* v. *Billington*, supra, 220 Conn. 224–25.

[10] Extrinsic fraud, meanwhile, has been described as "fraud involving the presentation of perjured testimony or fraudulent evidence . . . ." *Francis T. Zappone Co.* v. *Plymouth Commons Realty Group*, supra, Superior Court, Docket No. CV-02-0820681-S.

failed under the fourth prong of *Varley*. Therefore, the court's reliance on *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59*, instead of *Varley*, ultimately is of no consequence in the case at hand.

We now must determine whether the court abused its discretion in determining that the evidence allegedly concealed by the defendant would have changed the result of the trial. In its memorandum of decision, the court essentially concluded that, given its factual findings that the plaintiff was aware of the existence and the general content of the anonymous note and the discrimination complaints throughout the "pendency" of the case, even if the defendant wrongfully had concealed them, it was of no consequence because the actual possession of these items by the plaintiff would not have changed the result of the trial. "[W]e accept the factual findings of the trial court unless they are clearly erroneous." *State* v. *Webb*, 238 Conn. 389, 470–71, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000). If the record supports the finding, it is not clearly erroneous. See *State* v. *Kennedy*, 20 Conn. App. 354, 362, 567 A.2d 841 (1989), cert. denied, 214 Conn. 805, 573 A.2d 317 (1990).

In the plaintiff's amended complaint, dated May 28, 2002, she alleged that "[t]he plaintiff is filing this complaint to contest the willful discrimination against her by the [s]tate of Connecticut, [d]epartment of [correction] on the basis of gender, *sexual orientation*, race, and physical disability in the terms and conditions of her employment . . . ." (Emphasis added.) The plaintiff goes on to state: "On or about October 7, 1999, Captain Kelley wrote in an incident report that he knew the plaintiff was the girlfriend of another female employee. Kelley then published this incident report to Warden Khalsa . . . ." The plaintiff then alleges that

Khalsa made an improper comment about her sexual orientation, that she was discriminated against under the *pretext* of not complying with hair regulations and that she tried to discuss the discrimination with high level supervisors. Finally, the plaintiff avers that "[o]n information and belief, Captain Kelley has a practice of harassing female supervisors and female correctional officers because of their gender. Females have filed *complaints* against Captain Kelley. . . . Captain Valade has openly stated he believes women do not belong in the [c]orrections field. He, too, has had *complaints* of gender discrimination against him." (Emphasis added.)

In addition, portions of the trial transcript[11] supplied by the defendant in its appendix support the following factual findings made by the court in regard to what transpired at the trial itself: "[The] plaintiff's counsel in opening arguments stressed that . . . [the plaintiff] was on an upward trajectory in her employment from her first year at the [department of correction] in 1988 until October, 1999, when . . . Kelley became her supervisor. The existence of the note and its general content alleging a romantic relationship with another female correctional officer was pointed out to the jury numerous times before the actual document was produced. . . . The existence of the note was not hidden, the central thrust of its contents had been known during the entire pendency of the case. Discrimination on the basis of sexual orientation was at the core of the trial and articulated by counsel at the start. The note's actual tone and contents tend to support the testimony of the various defense witnesses who claimed that they did not investigate [the allegations in the note] further, since no details could have been secured from an anonymous

---

[11] The plaintiff failed to file the trial transcripts with this court. Practice Book § 63-8 requires an appellant to order and to file an official transcript and an electronic version of the transcript.

source. The language of the note is also such [as] to support the comments that it was not particularly trustworthy information, but merely salacious. And it is cumulative of other facts the jury could have found concerning sexual discrimination in the department of correction. . . . Most of what the actual note had to contribute to the outcome was already before the jury . . . ." As to the discrimination complaints, the court stated: "[T]hese documents are cumulative of other evidence that was presented at trial. Lieutenant Osten attended the trial and testified concerning her complaint against Captains Kelley and Valade. The jury had before it the facts, based on her testimony, of what took place and the conduct complained of. . . . The complaint field by . . . Jackson is also cumulative of other evidence . . . ."

Moreover, on the first day of the trial, the plaintiff entered into evidence an incident report written by Kelley, dated October 12, 1999, in which Kelley wrote: "On [October 7, 1999], I received an anonymous note on a page three report. The note appears to have been [w]ritten by staff. The note states that Bruner hurt herself while playing [P]ing-[P]ong with [another correctional officer]. The [n]ote states that Bruner was lying about slipping on water. The note also alleges that Bruner is involved [i]n a romantic relationship with [the plaintiff]."

It is evident that the plaintiff was aware of the existence and content of the anonymous note and the discrimination complaints and used that information to bolster her theory at trial that she was discriminated against on the basis of her sexual orientation. This being so, we conclude that the court did not abuse its discretion in determining that even if the defendant had concealed these items wrongfully, it is of no moment because there does not exist a substantial likelihood

that the actual production of them would have changed the result of the trial.

The judgment is affirmed.

In this opinion the other judges concurred.