******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARK DESPRES *v.* COMMISSIONER OF
CORRECTION
(AC 37566)

DiPentima, C. J., and Lavine and Alvord, Js.

*Argued April 6—officially released June 28, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*April E. Brodeur*, assigned counsel, for the appellant (petitioner).

*Lawrence J. Tytla*, supervisory assistant state's attorney, with whom was *Michael L. Regan*, state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. Following a grant of certification to appeal by the habeas court, the petitioner, Mark Despres, appeals from the judgment of the habeas court denying his second petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) "used an erroneous standard and analysis" in rejecting his claim that the ineffective assistance of his counsel at sentencing deprived him of his right to appeal from the judgment of conviction on his guilty pleas, and (2) "used an erroneous analysis" in rejecting his claim that the judge who presided over his first habeas trial should have been recused because his involvement in pretrial matters of the petitioner's criminal prosecution created an appearance of impropriety. We disagree and, accordingly, affirm the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. On March 10, 1994, the petitioner murdered Anson B. Clinton III at the request of former Attorney Haiman Clein. Clein was having an affair with an associate in his law firm, former Attorney Beth Ann Carpenter, whose sister was married to Clinton. Carpenter was engaged in a custody dispute over the daughter of her sister. Carpenter asked Clein to kill Clinton, and Clein hired the petitioner to commit the murder.[1] Clein told the petitioner that he was involved with a woman whose niece was being abused by Clinton, and that the only way to stop the abuse was to kill Clinton.

Through a newspaper advertisement, the petitioner discovered that Clinton was selling a tow truck. The petitioner called Clinton and made arrangements to meet him at a designated time and place to discuss his interest in purchasing the truck. The petitioner brought his fifteen year old son to the meeting and, after a brief conversation, Clinton agreed to show them the truck. The petitioner and his son followed Clinton on Interstate 95 to an exit in East Lyme. The petitioner flashed his headlights, indicating that he wanted Clinton to pull over to the side of the roadway. After stopping, Clinton and the petitioner exited their vehicles and Clinton approached the petitioner. The petitioner then shot Clinton multiple times and ran over his body while speeding away from the scene when he saw headlights approaching the area. Clinton died from gunshot wounds to his head and upper body.

The petitioner was arrested in connection with Clinton's death and, ultimately, was charged with capital felony murder in violation of General Statutes (Rev. to 1994) § 53a-54b, murder in violation of General Statutes § 53a-54a, and conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a. Prior to his trial date, the petitioner and the state engaged in extensive plea negotiations. At that time, he was represented

by Attorney Michael Fitzpatrick. Fitzpatrick investigated the case in preparation for trial on the capital felony murder charge, which exposed the petitioner to the death penalty, and hired a forensic psychiatrist and a sentencing consultant. The forensic psychiatrist determined that the petitioner was competent to stand trial and that he had not been suffering from any mental or emotional condition at the time he murdered Clinton. He also determined that there were some mitigating factors that could be used during the sentencing phase of the trial. The petitioner was fully engaged in assisting with his defense and in discussing the state's plea offers with Fitzpatrick.

On May 6, 1997, which was during jury selection for the scheduled criminal trial, the petitioner and the state reached a plea agreement. The agreement, reduced to writing and signed by the petitioner, provided that he would plead guilty to murder and conspiracy to commit murder in exchange for a recommended sentence of forty-five years incarceration, with the right to argue for less time. The agreement further provided that if the petitioner cooperated with the state in its prosecutions of Clein and Carpenter, the charge of capital felony murder would be nolled at the time of his sentencing.[2] The petitioner pleaded guilty to murder and conspiracy to commit murder that same day, and was canvassed thoroughly by the court, *Clifford*, *J.*, with respect to the terms of the plea agreement. The matter was then continued for sentencing pending the resolution of his codefendants' cases. See footnote 2 of this opinion.

Soon after entering his guilty pleas, the petitioner began expressing his dissatisfaction with his agreed upon sentence and threatened to discontinue his cooperation with the state unless a more beneficial plea agreement could be reached. He also threatened to engage in a hunger strike. He filed motions to withdraw his guilty pleas, and motions to discharge his attorney and to proceed as a self-represented party. When Carpenter was criminally prosecuted for her role in Clinton's death, the petitioner refused to testify at her trial. On April 22, 2002, the state's attorney notified the petitioner that he had violated the terms of the plea agreement. It was unclear at that time whether the state would vacate the agreement and proceed to trial or seek to negotiate an agreement less favorable to the petitioner.

A few months prior to the petitioner's scheduled sentencing in February, 2003, the petitioner consulted with Attorney Jon Schoenhorn to discuss representation at the sentencing hearing. The petitioner decided to retain Schoenhorn, who succeeded in convincing the state not to vacate the plea agreement. Accordingly, the petitioner did not lose the benefits of that agreement, and his sentence was capped at forty-five years. Although Schoenhorn argued for a lesser period of incarceration

at the sentencing hearing, Judge Clifford imposed a forty-five year sentence because of the heinous nature of the crime and the petitioner's failure to cooperate fully with the state at Carpenter's trial. The petitioner did not appeal from the judgment of conviction.[3]

Several months after the sentencing, the petitioner contacted Schoenhorn and raised the issue of appealing his convictions. The petitioner subsequently filed a motion to correct an illegal sentence, which was denied by the trial court and affirmed on appeal. *State* v. *Despres*, 107 Conn. App. 164, 165, 167, 944 A.2d 989, cert. denied, 288 Conn. 904, 953 A.2d 649 (2008). He then filed his first petition for a writ of habeas corpus, claiming that his pleas were not intelligently or knowingly made because Fitzpatrick failed to explain the plea canvass to him. The petitioner was represented by Attorney Laljeebhai Patel during the first habeas trial. The first habeas court, *Hon. Joseph J. Purtill*, judge trial referee, denied his petition on February 1, 2011. The petitioner appealed to this court, but later withdrew that appeal.

On February 1, 2011, the petitioner filed his second habeas petition, which is the subject of the present appeal. Although he raised several issues in his petition, the relevant claims were that (1) his counsel at his sentencing proceeding, Schoenhorn, provided ineffective assistance because he failed to advise him of his right to appeal his convictions, (2) his counsel at his first habeas trial, Patel, provided ineffective assistance because he failed to move to recuse Judge Purtill from presiding over the trial even though Judge Purtill had presided over many of the petitioner's pretrial criminal proceedings, and (3) Judge Purtill should have recused himself sua sponte from presiding over the petitioner's first habeas trial because of his involvement in the petitioner's pretrial criminal proceedings. Both parties filed pretrial briefs. On May 6, 2014, the court, *Cobb, J.*, held a trial on the petitioner's second habeas petition. In addition to the submission of various exhibits, the petitioner testified and called Fitzpatrick, Schoenhorn and Patel as his witnesses. At his request, the petitioner was permitted to file a posttrial brief. The respondent, the Commissioner of Correction, declined to file a posttrial brief.

The court issued its memorandum of decision on November 6, 2014, in which it made the following determinations: (1) the petitioner did not tell Schoenhorn that he wished to proceed to trial; (2) Schoenhorn was retained to convince the state not to vacate the plea agreement so that the petitioner would receive the benefit of a maximum sentence of forty-five years; (3) Schoenhorn did not believe that there was any basis to appeal the convictions and did not recall the petitioner asking him to file an appeal; (4) if the petitioner had expressed the desire to appeal, Schoenhorn would have

provided him with the necessary appeal forms; (5) the petitioner did not inform Schoenhorn that he wished to appeal his convictions, after pleading guilty, until months after his convictions; (6) there was no reason for Schoenhorn to believe that the petitioner would want to appeal because the petitioner had received a very favorable plea bargain in a notorious murder for hire case and avoided the death penalty; (7) the petitioner failed to demonstrate that there were any nonfrivolous grounds to appeal; (8) Patel did not move to recuse Judge Purtill because he saw no basis for seeking his recusal; (9) although the petitioner raised the issue of Judge Purtill's recusal in his pretrial brief, he did not raise that issue in his posttrial brief, "leaving the court to wonder if he [was] still pursuing this claim"; (10) the petitioner provided no evidence to establish that Judge Purtill was "implicitly or explicitly biased" in the petitioner's first habeas trial; (11) the petitioner's first habeas trial did not involve any matter that Judge Purtill previously had decided in the petitioner's criminal proceeding; and (11) the petitioner provided no legal authority that would require the recusal of Judge Purtill under the circumstances of this case. Accordingly, the habeas court denied the petitioner's second petition for a writ of habeas corpus. This appeal followed.

I

The petitioner's first claim is that the habeas court "used an erroneous standard and analysis" in rejecting his claim that the ineffective assistance of Schoenhorn, his counsel at sentencing, deprived him of his right to appeal from the judgment of conviction on his guilty pleas. Specifically, he argues that his claim at the second habeas trial was that Schoenhorn knew or should have known that the petitioner would want to appeal his guilty pleas, but that Schoenhorn advised the petitioner that he had no right to appeal a guilty plea, thereby depriving the petitioner of his right to a direct appeal. The petitioner maintains that the court misconstrued his claim and denied his petition on the basis that Schoenhorn had not been retained for the purpose of representing him on appeal.[4] Whether the court applied the proper legal standard is a question of law and subject to plenary review. See *Duart* v. *Dept. of Correction*, 116 Conn. App. 758, 764, 977 A.2d 670 (2009), aff'd, 303 Conn. 479, 34 A.3d 343 (2012).

Appropriately relying on *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 9–10, 761 A.2d 740 (2000), as reaffirmed in *State* v. *Turner*, 267 Conn. 414, 433, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004), the habeas court concluded that Schoenhorn had a constitutional obligation to inform the petitioner of his appeal rights if the petitioner reasonably demonstrated to Schoenhorn his interest in filing an appeal or if a rational defendant would want to appeal under the circumstances. With respect to prej-

udice, the petitioner would have to demonstrate that, but for Schoenhorn's failure to consult with him about an appeal, he would have timely appealed the convictions on his guilty pleas. *Ghant* v. *Commissioner of Correction*, supra, 255 Conn. 10. The habeas court appropriately noted that this determination depends in part on whether the petitioner demonstrated that there were nonfrivilous grounds to appeal. Id.

Utilizing these standards, the court made the factual finding that "[the] petitioner did not inform Attorney Schoenhorn that he wished to appeal from his conviction, after pleading guilty, and did not express any interest in a possible appeal to Attorney Schoenhorn until months after his conviction and the time for appealing had long passed."[5] Moreover, the court determined that there would have been no reason for Schoenhorn to believe that the petitioner wished to appeal because he had been retained to preserve the plea agreement, cap the petitioner's sentence at forty-five years, and avoid the possibility of a death sentence for a charge of capital felony murder.[6]

Additionally, the habeas court concluded that the petitioner failed to demonstrate that he had any nonfrivolous grounds to appeal. At the habeas trial, the petitioner claimed that he would have appealed from the trial court's denial of his right to represent himself and the trial court's denial of his motions to withdraw his guilty pleas. The habeas court concluded that the petitioner failed to provide "an adequate legal or factual record" with respect to those claims. The motions failed to state reasons for the relief requested, and no transcripts were submitted that demonstrated that the motions were pursued and denied by the trial court. According to the habeas court, "[o]ther than some general platitudes and arguing that the petitioner preserved these issues for appeal, the petitioner's brief is devoid of any argument to establish the nonfrivolous nature of these issues for the purpose of appeal." The record supports the habeas court's determinations.

Accordingly, with respect to the petitioner's first claim, we conclude that the habeas court applied the proper legal standard and analysis, and that the record supports the court's determination that the petitioner failed to demonstrate that Schoenhorn rendered ineffective assistance.

## II

The petitioner's next claim is that the habeas court violated his constitutional right to due process when it "used an erroneous analysis" in rejecting his claim that the judge who presided over his first habeas trial should have been recused because his involvement in pretrial matters of the petitioner's criminal prosecution created an appearance of impropriety. In his habeas petition, the petitioner alleged that (1) Patel, as his habeas counsel,

rendered ineffective assistance when he failed to move for the recusal of Judge Purtill as the judge presiding over his first habeas trial, and (2) Judge Purtill should have sua sponte recused himself. The petitioner argues that his claimed basis for the recusal was the appearance of impropriety, but that the habeas court denied his petition because he failed to demonstrate actual bias on the part of Judge Purtill.[7] For that reason, the petitioner argues that the court misconstrued his claim and applied an incorrect analysis. The petitioner's claim is subject to plenary review. See *Duart* v. *Dept. of Correction*, supra, 116 Conn. App. 764.

At the habeas trial, the petitioner presented evidence that Judge Purtill had presided over a number of his pretrial matters, including, inter alia, the signing of the arrest warrant, the appointment of a special public defender, the appointment of new counsel, the granting of a motion to preserve evidence, and the sealing of a letter that the petitioner wrote to Judge Purtill.[8] In its memorandum of decision, the habeas court stated that Patel credibly testified that he did not seek to recuse Judge Purtill "because he did not see any basis for doing so."[9] Further, the court determined that "the petitioner has provided no evidence that Judge Purtill was implicitly or explicitly biased in the petitioner's habeas case. The prior habeas case did not involve any matter that Judge Purtill had previously decided in the petitioner's criminal case." Finally, the court stated: "[T]he petitioner has provided no legal authority, and the court is aware of none, that would require recusal under these circumstances."[10]

Contrary to the petitioner's argument, the habeas court did not focus solely on the absence of actual bias, but, rather, focused on the lack of evidence to show any potential impropriety under the circumstances of the case. The habeas court could not have concluded otherwise without engaging in pure speculation. "[S]peculation is insufficient to establish an appearance of impropriety. . . . [A] factual basis is necessary to determine whether a reasonable person, knowing all of the circumstances, might reasonably question the trial judge's impartiality. . . . Vague and unverified assertions of opinion, speculation and conjecture cannot support a motion to recuse . . . ." (Internal quotation marks omitted.) *McKenna* v. *Delente*, 123 Conn. App. 137, 144, 1 A.3d 260 (2010).

We conclude that the court applied the appropriate legal principles and that the record supports its determinations that Patel did not render ineffective assistance by failing to seek Judge Purtill's recusal, and that the petitioner's due process rights were not violated when Judge Purtill failed to recuse himself sua sponte from presiding over the first habeas trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner agreed to commit the murder for $8500, which amount was later reduced by Clein.

[2] The plea agreement provided in relevant part: "This cooperation shall take place in the form of answering any questions as put to him by the Connecticut State Police and the State's Attorney's Office, by testifying truthfully in any subsequent trial or hearing arising from the death of Anson Clinton III and by volunteering any information he knows to be relevant, whether or not he is asked." If the state's attorney's office determined that the petitioner had not been cooperative and truthful, the agreement provided that the state's attorney could proceed to trial on the capital felony murder charge that exposed the petitioner to the death penalty.

[3] Both parties agree that the record does not reflect that the petitioner was advised by Judge Clifford or the clerk of the court of his right to appeal at the time of sentencing. Practice Book § 43-30 requires notification of the right to appeal only "[w]here there has been a conviction after a trial . . . ." As our Supreme Court noted in *D'Amico* v. *Manson*, 193 Conn. 144, 149 n.3, 476 A.2d 543 (1984): "Apparently the reason for excluding convictions resulting from guilty pleas from the notification requirement was to avoid the confusion which had resulted in filing frivolous appeals by defendants who had pleaded guilty."

[4] As one of the reasons for concluding that Schoenhorn did not render ineffective assistance, the court provided the following analysis in its memorandum of decision: "[T]he petitioner has not proven that Attorney Schoenhorn was retained for purposes of representing the petitioner on appeal. Rather, he was retained to represent the petitioner at his sentencing and, in particular, to convince the state not to withdraw the plea agreement after the petitioner failed to cooperate with the state in the codefendants' cases. The court is not aware of any rule or case, and the petitioner has cited none, that requires trial counsel, or counsel retained for a specific purpose, to continue to represent the petitioner on appeal or to file an appeal on the petitioner's behalf when he has not been retained to do so."

After reviewing the petitioner's amended petition for a writ of habeas corpus, his pretrial brief and his posttrial brief, we agree with the petitioner that the issue before the habeas court was whether Schoenhorn's performance was deficient because he failed to properly advise the petitioner of his appellate rights. Nevertheless, as discussed in this opinion, the court referenced the applicable case law and legal principles in its determination that Schoenhorn did not render ineffective assistance. The court's previously quoted reason in its memorandum of decision was irrelevant to the issue before the court and not helpful in its analysis of the petitioner's claim. The remaining reasons for the court's conclusion, however, are supported by the record and are a sufficient basis for the court's determination that the petitioner failed to prove his ineffective assistance claim against Schoenhorn.

[5] Although the petitioner testified at the habeas trial that he asked Schoenhorn about filing an appeal and that Schoenhorn informed him that he could not appeal because he had entered guilty pleas, it is clear from the court's factual finding that it did not find the petitioner to be credible. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given their testimony." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448, 936 A.2d 611 (2007).

[6] At the habeas trial, Schoenhorn testified that the petitioner never expressed a desire to proceed as a self-represented party or to proceed to trial. The petitioner only inquired whether Schoenhorn could negotiate a better plea agreement with the state.

As pointed out by the respondent, there was no reason the petitioner would seek to appeal and expose himself to prosecution for a capital offense and greater punishment, when Schoenhorn had been retained to preserve the plea agreement and to limit the petitioner's incarceration to a maximum of forty-five years.

[7] On appeal, the petitioner does not claim that recusal was required because of actual bias. We note that a judge's failure to disqualify himself or herself will implicate the due process clause only when the right to disqualification arises from that judge's actual bias. *State* v. *Canales*, 281 Conn. 572, 594–95, 916 A.2d 767 (2007).

[8] Although the petitioner presented evidence of the letter's existence, he did not present evidence of the letter's contents.

[9] The court noted that the petitioner did not even address this claim in his posttrial brief, although he had mentioned it in his pretrial brief.

[10] The court noted that there are statutes that expressly prohibit a judge's involvement in subsequent proceedings under certain enumerated situations. For example, General Statutes § 51-183c prohibits a judge who tried a case without a jury from retrying that case if a new trial is granted or the judgment is reversed by our Supreme Court. That statute further prohibits a judge who has presided over a jury trial from presiding over the retrial of the case if a new trial is granted. General Statutes § 51-183h prohibits a judge from presiding at the hearing of any motion that attacks the validity or sufficiency of any bench warrant of arrest that the judge has signed. General Statutes § 54-86c (b) provides that a judge who conducts an ex parte in camera hearing to determine whether information or material in a criminal case is exculpatory may not preside over the case if it is tried to the court.

———————————————————