MULLINS, J.
 

 In this wrongful death action, the self-represented defendant, Erick Bennett,
 
 [1]
 
 appeals from the judgment of the trial court rendered in favor of the plaintiff, Lubecca Johnson, administratrix of the estate of Willie Brown, Jr. On appeal, the defendant claims that the court improperly (1) denied his motion to dismiss for lack of subject matter jurisdiction,
 
 [2]
 
 (2) denied his motion to set aside a default for failure to plead, and (3) denied his motion for a new trial. We affirm the judgment of the trial court.
 

 The following facts and procedural history are relevant to our consideration of the defendant's claims on
 appeal. The plaintiff commenced this action against the defendant, Raffy's Café I, LLC, doing business as Raffy's Café (Raffy's Café), and Rafael Robles on July 8, 2010. In her complaint, the plaintiff alleged that the defendant fatally stabbed Willie Brown, Jr. during an altercation at Raffy's Café in Meriden on July 10, 2009. The first two counts of the four count complaint were directed at Raffy's Café and its proprietor, Robles. The first count sounded in dram shop liability, and the second sounded in common-law recklessness.
 
 [3]
 

 The last two counts of the complaint were directed at the defendant. The third count sought recovery on the theory that the defendant's intentional conduct wrongfully caused Brown's death. The fourth count alleged that the defendant's negligence wrongfully caused Brown's death.
 

 On August 30, 2010, the defendant filed an appearance, representing himself. The defendant also had been arrested and charged with murder as a result of the stabbing incident. Consequently, this civil matter and the defendant's criminal case were occurring simultaneously. However, the criminal matter concluded on August 26, 2011, when the trial court rendered a judgment of conviction and sentenced the defendant to fifty years of incarceration in accordance with the jury's guilty verdict. At no point during the duration of the criminal proceedings did the defendant file a responsive pleading in this civil matter.
 

 Even after the criminal matter concluded, the defendant neglected to file any responsive pleading to the plaintiff's complaint. Accordingly, on October 13, 2011, nearly two months after the conclusion of the criminal case, the plaintiff filed a motion for default for failure
 to plead. On October 20, 2011, the clerk granted that motion.
 

 Three years later, on November 21, 2014, the plaintiff filed a certificate of closed pleadings and requested a hearing in damages. In the three year period between the entering of the default and the closing of the pleadings, the defendant neither filed a responsive pleading nor sought to set aside the default. However, the defendant filed his first motion to dismiss during that period, on May 7, 2014. The plaintiff objected to the defendant's first motion to dismiss on June 4, 2014, and the court sustained the objection on June 23, 2014. The defendant has not challenged the court's ruling with respect to the first motion to dismiss.
 

 On December 8, 2014, after the plaintiff already had filed a certificate of closed pleadings, the defendant filed a motion to set aside the default. The court denied that motion on December 22, 2014.
 

 Subsequently, on December 26, 2014, the defendant filed a second motion to dismiss. In that motion, he argued that the court lacked subject matter jurisdiction. On February 5, 2015, the defendant, who was incarcerated, filed an application for a writ of habeas corpus ad testificandum
 
 [4]
 
 seeking permission to attend court for a hearing on this motion. The court granted the application. Thereafter, on February 9, 2015, the defendant attended the hearing on the motion. Following the hearing, on April 6, 2015, the court issued a memorandum of decision denying the motion. The defendant has challenged the court's denial of his second motion to dismiss in this appeal.
 

 On April 27, 2015, the court held a hearing in damages. As with the hearing on his second motion to dismiss, the
 defendant was incarcerated at the time of the hearing in damages. However, unlike the hearing on his second motion to dismiss, the defendant did not file an application for a writ of habeas corpus ad testificandum. Consequently, the defendant did not appear at the hearing in damages. As a result of the hearing, the court rendered judgment in favor of the plaintiff, awarding $9217.74 in economic damages and $1,292,200 in noneconomic damages.
 

 On June 15, 2015, the defendant filed a motion for a new trial, to which the plaintiff objected on June 23, 2015. The court sustained the plaintiff's objection on July 7, 2015. This appeal followed.
 

 I
 

 MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
 

 The defendant claims that the trial court erred in denying his motion to dismiss for
 lack of subject matter jurisdiction. Specifically, the defendant argues that the court improperly rejected the following five attacks on the court's subject matter jurisdiction: (1) the plaintiff's probate certificate authorizing her to bring this lawsuit as administratrix was invalid because it lacked the valid raised seal of the Probate Court; (2) the probate certificate itself did not authorize the plaintiff to bring this suit; (3) the defendant was entitled to "sovereign immunity" from suit; (4) principles of double jeopardy barred this suit; and (5) by granting summary judgment for the codefendants, Raffy's Café and Robles, the court also was required to dismiss the counts against the defendant. The plaintiff responds that none of these grounds deprived the court of subject matter jurisdiction. We agree with the plaintiff.
 

 We first set forth our standard of review. "Our standard of review of a trial court's findings of fact and
 conclusions of law in connection with a motion to dismiss is well settled. A finding of fact will not be disturbed unless it is clearly erroneous.... [If] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts .... Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.)
 
 Property Asset Management, Inc.
 
 v.
 
 Lazarte
 
 ,
 
 163 Conn.App. 737
 
 , 746,
 
 138 A.3d 290
 
 (2016).
 

 The first jurisdictional defect alleged by the defendant is that the plaintiff's probate certificate "lacks the court of probate seal impressed on the certificate, as required by the certificate." We conclude that this claim lacks merit. The trial court found, after examining the probate certificate, that the certificate in fact contained the proper probate seal. The defendant has presented nothing to show that the trial court's finding, based on its review of the probate certificate, was clearly erroneous.
 

 The defendant's second alleged jurisdictional defect is that the plaintiff's probate certificate, which states that the "fiduciary has no power to buy, sell, or with-draw assets of the estate," prohibits the plaintiff from bringing this suit. However, the trial court found that the probate certificate expressly authorizes the plaintiff to bring this suit because it provides that "[t]he fiduciary may ... make claims on behalf of the estate." Moreover, the court also concluded that "the plaintiff's civil action is an exercise of one of the express powers granted to the fiduciary by General Statutes § 45a-234 (18)." See General Statutes § 45a-234 (18) (administratrix of estate has authority to "compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle claims in favor of or against ... estate or trust as [she] shall deem advisable"). After reviewing
 the record, we conclude that the court's determination that the plaintiff had the authority to bring this suit is legally correct and factually supported.
 

 The defendant's third attack on the trial court's subject matter jurisdiction is that he was immune from suit by virtue of "sovereign immunity." Specifically, the thrust of the defendant's claim is that he is a "sovereign in [his] own realm" because he is a "noncorporate human being." Consequently, according to the defendant, this status as "a sovereign" means that he is not subject to the jurisdiction of our courts, which are "arms" of "the Commercial Corporate State of Connecticut." We agree with the trial court that the defendant does not meet the criteria necessary to claim sovereign immunity.
 

 "[T]he fact that the state is not named as a defendant does not conclusively
 establish that the action is not within the principle which prohibits actions against the sovereign without its consent.... The vital test is to be found in the essential nature and effect of the proceeding.... [There are] four criteria [used in] determin[ing] whether an action is in effect, one against the state and cannot be maintained without its consent: (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." (Citation omitted; internal quotation marks omitted.)
 
 Miller
 
 v.
 
 Egan
 
 ,
 
 265 Conn. 301
 
 , 308,
 
 828 A.2d 549
 
 (2003).
 

 Our review of the record leads us to conclude that the defendant's claim is without merit because he failed to present any factual or legal support demonstrating (1) that he is a state official, (2) that this suit concerns a matter in which he represents the state, (3) that the
 state is the real party, and (4) that the judgment will operate to control the activities of the state or subject it to liability. Simply put, this suit is an action that was brought against a private person in his individual capacity for monetary damages arising out of private conduct. Accordingly, we conclude that the trial court's rejection of the defendant's sovereign immunity claim was legally correct and factually supported.
 
 [5]
 

 The defendant's fourth attack on the trial court's subject matter jurisdiction is essentially a claim that the principles of double jeopardy bar this suit. Specifically, the defendant argues: "[Since] the plaintiff's appointment by the corporate state of Connecticut as administratrix makes her a [n] agent for the state, and the plaintiff [is] [represented] by a commissioner/attorney of the state ... this civil suit [is] in fact the state seeking to punish the defendant twice for the same [conduct] as in his criminal case ...." We agree with the trial court that the protections against double jeopardy are not implicated in this case.
 

 "It is well settled that prosecutions or convictions for double jeopardy purposes arise only from proceedings that are
 
 essentially criminal
 
 ." (Emphasis added; internal quotation marks omitted.)
 
 State
 
 v.
 
 Burnell
 
 ,
 
 290 Conn. 634
 
 , 645,
 
 966 A.2d 168
 
 (2009). "A proceeding is criminal for double jeopardy purposes, if it imposes a sanction
 
 intended as punishment
 
 ." (Emphasis added.)
 
 State
 
 v.
 
 Smith
 
 ,
 
 207 Conn. 152
 
 , 176,
 
 540 A.2d 679
 
 (1988). The instant proceeding, which is a civil lawsuit, is not
 criminal because the state is not seeking to criminally punish the defendant. Rather, a private party is seeking recovery of monetary damages pursuant to a civil cause of action. Therefore, contrary to the defendant's contention, jeopardy does not attach to this civil action. Accordingly, we conclude that the trial court's determination that double jeopardy principles did not deprive it of subject matter jurisdiction was legally correct and factually supported.
 
 [6]
 
 The defendant's final challenge to the trial court's subject matter jurisdiction is that the court was compelled to dismiss the counts against him because it previously granted summary judgment on the counts against Raffy's Café and Robles. In rejecting this contention, the trial court reasoned: "[T]he court's granting of summary judgment applied only to the dram shop claim in count one of the complaint and the reckless service of alcohol claim in count two.... [The] counts [directed against the defendant] turn on a different set of facts, the veracity of which are unaffected by the granting of summary judgment in favor of Raffy's Café and Robles." After reviewing the record, we conclude that this determination was legally correct and factually supported.
 

 Accordingly, we conclude that the court properly denied the defendant's motion to dismiss for lack of subject matter jurisdiction.
 

 II
 

 MOTION TO SET ASIDE THE DEFAULT FOR FAILURE TO PLEAD
 

 The defendant next claims that the trial court abused its discretion in denying his motion to set aside the default for failure to plead. Specifically, the defendant asserts that his failure to plead was justified on the following three grounds: (1) he was exercising his fifth amendment right against self-incrimination; (2) requiring him to plead in this case while he simultaneously was facing criminal charges placed him under duress; and (3) he mistakenly believed that an affidavit that he provided to the codefendants for use with their motion for summary judgment served as an answer to the plaintiff's complaint. The plaintiff responds that the defendant's reliance on these three grounds is unavailing, and, therefore, the trial court properly denied the motion to set aside the default. We agree with the plaintiff.
 

 We first set forth our standard of review and the relevant legal principles. "It is well established that [the] determination of whether to set aside [a] default is within the discretion of the trial court ... [and] such a determination will not be disturbed unless that discretion has been abused or where injustice will result. In the exercise of its discretion, the trial court may consider not only the presence of mistake, accident, inadvertence, misfortune or other reasonable cause ... factors such as [t]he seriousness of the default, its duration, the reasons for it and the degree of contumacy involved ... but also, the totality of the circumstances, including whether the delay has caused prejudice to the nondefaulting party." (Internal quotation marks omitted.)
 
 Chevy Chase Bank, F
 

 .
 

 S
 

 .
 

 B
 

 .
 
 v.
 
 Avidon
 
 ,
 
 161 Conn.App. 822
 
 , 833,
 
 129 A.3d 757
 
 (2015).
 

 "A motion to open a default for failure to plead is governed by Practice Book §§ 17-32 and 17-42. The opening of a default when a claim for a hearing in damages has been filed is controlled by Practice Book § 17-42 because that is the rule of practice that addresses the setting
 aside of a default by the judicial authority.... The distinction between whether Practice Book § 17-32 applies or Practice Book § 17-42 applies is whether a claim for a hearing in damages is filed before, or after, a motion to set aside the default is filed." (Footnote omitted; internal quotation marks omitted.)
 
 Bohonnon Law Firm, LLC
 
 v.
 
 Baxter
 
 ,
 
 131 Conn.App. 371
 
 , 380,
 
 27 A.3d 384
 
 , cert. denied,
 
 303 Conn. 902
 
 ,
 
 31 A.3d 1177
 
 (2011).
 
 [7]
 

 In the present case, the defendant filed a motion to set aside the default after the plaintiff already had requested a hearing in damages. Therefore, the motion to open in this case is governed by Practice Book § 17-42. As such, the default could be set aside only after the court found that good cause existed to set aside the default. After reviewing the defendant's grounds for setting aside the default and the record as a whole, we conclude that the trial court did not err in concluding that the defendant failed to establish that there was good cause for setting aside the default.
 

 The defendant's first ground is that he was excused from pleading because he had been exercising his privilege against self-incrimination in the criminal action against him and in this civil action. We are unpersuaded.
 

 Although the privilege against self-incrimination affords a person "the right to refuse to answer questions in a civil proceeding where the answers might incriminate him in a future criminal proceeding";
 
 Tyler
 
 v.
 
 Shenkman-Tyler
 
 ,
 
 115 Conn.App. 521
 
 , 526,
 
 973 A.2d 163
 
 , cert. denied,
 
 293 Conn. 920
 
 ,
 
 979 A.2d 493
 
 (2009) ; it is "not self-executing [and] must be expressly invoked at the time that allegedly incriminatory evidence is sought to be compelled or introduced."
 
 Dunham
 
 v.
 
 Dunham
 
 ,
 
 217 Conn. 24
 
 , 32,
 
 584 A.2d 445
 
 (1991), over-ruled on other grounds by
 
 Santopietro
 
 v.
 
 New Haven
 
 ,
 
 239 Conn. 207
 
 ,
 
 682 A.2d 106
 
 (1996).
 

 "A [party] may not use the privilege [against self-incrimination] as a sword freeing him from his civil discovery obligations and his responsibilities at trial."
 
 United States
 
 v.
 
 Talco Contractors, Inc.
 
 ,
 
 153 F.R.D. 501
 
 , 505 (W.D.N.Y. 1994). "The privilege applies not only at trial but also at the pleading stage.... However, ... a proper invocation of the privilege [does not] mean that a defendant is excused from the requirement to file a responsive pleading; he is obliged to answer those allegations that he can and to make a specific claim of the privilege as to the rest.... [The privilege] protects an individual not only from involuntarily becoming a witness against himself in a criminal proceeding but also from answering specific allegations in a complaint.... But for one to invoke this privilege the party claiming it must not only affirmatively assert it, he must do so with sufficient particularity to allow an informed ruling on the claim.... [A] blanket refusal to answer or respond [i]s not sufficient [to invoke the privilege.]" (Citations omitted.)
 
 North River Ins. Co.
 
 v.
 
 Stefanou
 
 ,
 
 831 F.2d 484
 
 , 486-87 (4th Cir. 1987) ; see also
 
 Beth Israel Medical Center
 
 v.
 
 Smith
 
 ,
 
 576 F.Supp. 1061
 
 , 1072 (S.D.N.Y. 1983) ("The defendants, of course, are entitled to assert
 their Fifth Amendment privilege in their answer. It is equally plain, however, that an answer
 must be filed and a decision made whether and to what extent the defendants wish to assert the privilege.").
 

 Here, the record reveals that the defendant never affirmatively asserted a specific claim of the privilege against self-incrimination prior to filing his motion to set aside the default. Rather, he simply failed to file any pleading responding to the allegations set forth in the plaintiff's complaint. The failure to do so was not excused by virtue of the defendant's purported-but never properly asserted-claim of privilege. Consequently, the trial court reasonably determined that the defendant's purported invocation of the privilege against self-incrimination was not good cause justifying the opening of the default.
 

 Moreover, the fact that this civil action was pending while the defendant's criminal trial was occurring does not excuse his failure to timely assert the privilege. The record reveals that the defendant had ample time to assert his privilege after the criminal trial concluded. The defendant was sentenced on August 26, 2011, and the plaintiff did not file a motion for a default until two months later.
 

 Furthermore, after the clerk entered a default on October 20, 2011, more than three years passed before the plaintiff filed a certificate of closed pleadings and requested a hearing in damages on November 21, 2014. During that period, the defendant could simply have filed an answer to the plaintiff's complaint, and, pursuant to Practice Book § 17-32 ; see footnote 7 of this opinion; the clerk would have been required to open the default. We note that the defendant certainly was not incapable of filing this or any other motion, as the record reflects that he made other filings during this period, including his first motion to dismiss. He simply never attempted to cure his default by filing an answer,
 nor did he, in this civil action, properly assert his privilege against self-incrimination.
 

 Accordingly, it was reasonable for the trial court to conclude that the defendant's purported invocation of his privilege against self-incrimination was not good cause excusing his failure to plead.
 

 The defendant's second ground for setting aside the default is related to the defendant's purported invocation of his privilege against self-incrimination. Specifically, the defendant argues: "The plaintiff brought suit against ... the defendant ... while [he] was awaiting his criminal trial for the same accusation, placing [him] under duress, so [he] chose to exercise his fifth amendment right to silence during such time ...." We are unpersuaded.
 

 "The classical or common law definition of duress is any wrongful act of one person that compels a manifestation of apparent assent by another ... without his volition.... The defendant must prove: [1] a wrongful act or threat [2] that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim." (Citations omitted; internal quotation marks omitted.)
 
 Chase Manhattan Mortgage Corp.
 
 v.
 
 Machado
 
 ,
 
 83 Conn.App. 183
 
 , 189,
 
 850 A.2d 260
 
 (2004).
 

 After reviewing the record, we conclude that the defendant failed to present the trial court with any factual or legal basis supporting the duress claim. The defendant's claim does not satisfy a critical element of duress because there was no evidence presented of a wrongful act or threat undertaken by the court or a party to the action. To begin, it was not "wrongful" for the plaintiff to maintain this civil action and to expect the defendant to file a
 pleading responding to the allegations in her complaint. Indeed, as previously explained,
 notwithstanding his purported invocation of the privilege against self-incrimination, the defendant still was required to file a responsive pleading and could be held in default for failing to do so. Thus, it also was not "wrongful" for the court to require the defendant's compliance with the rules of practice governing pleading in civil actions.
 

 More fundamentally, the alleged source of duress was the simultaneous occurrence of this civil action and the criminal action. However, once the defendant was sentenced in the criminal action, the alleged source of that duress necessarily was eliminated. As previously explained, the defendant could have filed an answer during the two month period separating the sentencing and the entering of a default; he also could have cured the default simply by filing an answer during the three year period separating the entering of a default and the plaintiff's request for a hearing in damages. He did neither. Accordingly, we conclude that the trial court reasonably rejected that this claim of duress was good cause excusing the defendant's failure to plead.
 

 The defendant's third ground for setting aside the default is that he believed that he filed an answer by providing an affidavit
 
 [8]
 
 to Raffy's Café and Robles for use with their motion for summary judgment. Like the
 trial court, we are not persuaded by this claim. As an initial matter, the defendant has failed to identify any authority or rule of practice providing that an affidavit attached to another party's summary judgment motion can be construed as the legal equivalent of an answer.
 

 Nevertheless, even if we were to construe the defendant's submission of the affidavit as an attempt to file an answer, we would conclude that it failed to respond sufficiently to the allegations
 
 actually directed at the defendant
 
 . As previously set forth, two of the complaint's four counts were directed at the defendant and alleged that he intentionally or negligently caused Brown's death by stabbing him. The complaint's remaining two counts were directed at Raffy's Café and Robles and alleged that Raffy's Café served the defendant alcohol on the night of the incident. Although the affidavit addressed the allegations relating to the service of alcohol by Raffy's Café, it did not address at all the allegations relating to the defendant's stabbing of Brown. Therefore, our review of the record leads us to conclude that, even when taking into consideration the affidavit, the defendant never made any filing that reasonably could be construed as answering the operative allegations made against him. Accordingly, the trial court reasonably determined that the defendant's purported mistaken belief regarding his affidavit was not good cause excusing his failure to plead.
 

 After reviewing the record as a whole, we conclude that the trial court reasonably determined that the defendant failed to demonstrate good cause for setting aside the default. Although the defendant was incarcerated and facing criminal charges when this civil action commenced, he had ample time after his criminal trial concluded to cure the default simply by filing a responsive pleading. We are mindful "that although we allow [self-represented] litigants some latitude, the right of self-representation, however, provides no attendant
 license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.)
 
 Chevy Chase Bank, F
 

 .
 

 S
 

 .
 

 B
 

 .
 
 v.
 
 Avidon
 
 , supra,
 
 161 Conn.App. at
 
 834 n.7,
 
 129 A.3d 757
 
 . Accordingly, the trial court's denial of the defendant's motion to set aside the default for failure to plead was not an abuse of discretion.
 

 III
 

 MOTION FOR A NEW TRIAL
 

 The defendant's final claim is that the trial court improperly denied his motion for a new trial. In particular, he argues that the court erred in rejecting his claim that a new trial should have been ordered on the grounds that he was denied a reasonable opportunity to appear and defend the suit, that new evidence was discovered, and that the judgment was obtained through fraud. The plaintiff responds that the trial court did not abuse its discretion in denying the defendant's motion for a new trial because none of the defendant's asserted grounds warranted the ordering of a new trial. We agree with the plaintiff.
 
 [9]
 

 "[O]ur standard of review of the trial court's denial of a motion for a new trial is limited to a determination
 of whether, by such denial, the court abused its discretion.... As a reviewing court considering the trial court's decision granting or denying a motion for a new trial, we must be mindful of the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided." (Citations omitted; internal quotation marks omitted.)
 
 In re James L.
 
 ,
 
 55 Conn.App. 336
 
 , 345,
 
 738 A.2d 749
 
 , cert. denied,
 
 252 Conn. 907
 
 ,
 
 743 A.2d 618
 
 (1999).
 

 "[A] party is entitled to a new trial on the ground of newly discovered evidence if such evidence is, in fact, newly discovered, will be material to the issue on a new trial, could not have been discovered and produced, on the trial which was had, by the exercise of due diligence, is not merely cumulative and is likely to produce a different result.... New trials are not granted upon newly discovered evidence which discredits a witness unless the evidence
 is so vital to the issues and so strong and convincing that a new trial would probably produce a different result.... The basic question which the trial court has to decide is whether upon all the evidence an injustice had been done. In deciding this question, the court has the exercise of a sound legal discretion, and its action cannot be disturbed unless this discretion has been abused." (Internal quotation marks omitted.)
 
 Id.
 

 "Evidence is newly discovered if it was not available at the time of trial, or it could not have been obtained by the exercise of reasonable diligence."
 
 Carter
 
 v.
 
 State
 
 ,
 
 159 Conn.App. 209
 
 , 223,
 
 122 A.3d 720
 
 , cert. denied,
 
 319 Conn. 930
 
 ,
 
 125 A.3d 204
 
 (2015). "To entitle a party to a new trial for newly-discovered evidence, it is indispensable that he should have been diligent in his efforts fully to prepare his cause for trial; and if the new evidence relied upon could have been known with reasonable diligence, a new trial will not be granted." (Internal
 quotation marks omitted.)
 
 LaCroix
 
 v.
 
 Glens Falls Ins. Co.
 
 ,
 
 107 Conn.App. 332
 
 , 335,
 
 945 A.2d 489
 
 (2008).
 

 "[O]ur Supreme Court [has] imposed four requirements on those seeking relief from a judgment secured by fraud: (1) There must have been no laches or unreasonable delay by the injured party after fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different." (Footnote omitted; internal quotation marks omitted.)
 
 Duart
 
 v.
 
 Dept. of Correction
 
 ,
 
 116 Conn.App. 758
 
 , 769,
 
 977 A.2d 670
 
 (2009), aff'd,
 
 303 Conn. 479
 
 ,
 
 34 A.3d 343
 
 (2012).
 

 "The want of a reasonable opportunity to appear and defend is ground for a new trial only when the movant also establishes that a just defense in whole or in part existed ...." (Internal quotation marks omitted.)
 
 In re Juvenile Appeal (84-1)
 
 ,
 
 1 Conn.App. 298
 
 , 301,
 
 471 A.2d 662
 
 (1984). "[A] motion for a new trial will not be granted ... on the ground of lack of opportunity to defend unless a good defense existed."
 
 Steve Viglione Sheet Metal Co.
 
 v.
 
 Sakonchick
 
 ,
 
 190 Conn. 707
 
 , 712,
 
 462 A.2d 1037
 
 (1983).
 

 With the proper legal framework in mind, we now consider the specific grounds asserted by the defendant in his motion for a new trial. Although the parties have characterized the defendant's claim as asserting three distinct grounds for a new trial, the claim appears to assert only two grounds.
 
 [10]
 
 We conclude that both of those grounds are without merit.
 

 The defendant's first ground appears to blend the theories of fraud and newly discovered evidence. The thrust of the first ground is that law enforcement, the state's attorney, witnesses called by the state at the defendant's criminal trial, the judge who presided over the criminal trial, and the plaintiff all participated in "conspiratorial fraud." That is, pursuant to "a chain of conspiracy," these individuals fraudulently suppressed, concealed, and withheld evidence favorable to the defense during the defendant's criminal trial. In particular, the defendant contends that (1) the state had suppressed phone records and emergency calls from the night of the stabbing; (2) the state had failed to provide
 the defendant with part of the medical examiner's report concerning Brown's autopsy; and (3) the affidavit to the defendant's arrest warrant had "omitted vital essential facts" from several witness statements, phone records, emergency calls, and the medical examiner's autopsy report. According to the defendant, the allegedly suppressed and concealed evidence exculpates him from Brown's death.
 
 [11]
 
 The defendant claims to have acquired newly discovered evidence of the foregoing "conspiratorial fraud," but it is unclear from the defendant's motion and brief
 
 when
 
 the defendant discovered such new evidence.
 

 After reviewing the record, we conclude that the trial court did not abuse its discretion in rejecting the defendant's first ground for a new trial. Insofar as that ground
 alleges fraud, the trial court reasonably could have concluded that the defendant failed to meet his burden of demonstrating that "[t]here [was] clear proof of the [alleged] fraud."
 
 Duart
 
 v.
 
 Dept. of Correction
 
 , supra,
 
 116 Conn.App. at 769
 
 ,
 
 977 A.2d 670
 
 . Our review of the record reveals that the defendant failed to offer any evidence substantiating his sundry and far-reaching allegations of "conspiratorial fraud." More generally, those allegations actually appear to attack the defendant's criminal conviction, and the defendant fails to connect them to an allegedly fraudulently procured judgment in this civil action. Moreover, insofar as the defendant's first ground alleges that he acquired newly discovered evidence, the trial court reasonably concluded that such allegations of new evidence did not require the ordering of a new trial.
 

 Assuming arguendo that the defendant did discover evidence of fraud occurring in the criminal trial, he failed to present the trial court with sufficient facts demonstrating that such evidence was
 
 newly
 
 discovered. The defendant's motion for a new trial is unclear as to
 
 when
 
 he discovered such evidence. At one point, the defendant asserts that the evidence "was discovered
 
 through
 
 this civil suit," suggesting that he had acquired the evidence
 
 in the course of this litigation
 
 and, thus, could have used that evidence in this suit before judgment was rendered. At another point, he contends that he discovered the purported evidence "on or about November 2012," which was more than one year after the defendant's criminal trial ended. This date also was approximately two years before the pleadings were closed and twenty-nine months before the trial court rendered judgment after holding a hearing in damages.
 

 Irrespective of the precise date of discovery, the representations in the defendant's motion indicate that he is claiming that the discovery occurred before a hearing in damages was requested. Thus, his claim must fail because he knew, or through due diligence could have known,
 the alleged information before the lapse of the opportunity to open the default and contest the plaintiff's allegations. See
 
 Baker
 
 v.
 
 Whitnum-Baker
 
 ,
 
 161 Conn.App. 227
 
 , 243,
 
 127 A.3d 330
 
 (2015) ("Even if the information offered were presumed to be 'evidence,' the information was either already
 known or could have readily been discovered through due diligence
 
 in advance of the trial
 
 .... This 'evidence,' such as it is, could have been discovered
 
 before the dissolution trial began
 
 , and it does not warrant a new trial ...." [Emphasis added.] ), cert. denied,
 
 321 Conn. 922
 
 ,
 
 138 A.3d 282
 
 (2016),
 
 petition for cert. filed
 
 (U.S. Sept. 6, 2016) (No. 16-8757).
 

 The defendant's second ground alleges that he was deprived of a reasonable opportunity to appear and defend the plaintiff's claims. Specifically, he argues that the trial court erred in failing to sua sponte issue a writ of habeas corpus ad testificandum ordering the department of correction to transport him from prison to the hearing in damages. We conclude that the trial court did not abuse its discretion in rejecting this claim.
 

 First, the record reveals that the defendant failed to establish that he had a just defense. See
 
 In re Juvenile Appeal (84-1)
 
 , supra,
 
 1 Conn.App. at 301
 
 ,
 
 471 A.2d 662
 
 ("[t]he want of a reasonable opportunity to appear and defend is ground for a new trial only when the movant also establishes that a just defense in whole or in part existed" [internal quotation marks omitted] ). As previously addressed in part I of this opinion, the trial court properly denied the defendant's motion to set aside the default entered against him for failure to plead. Critically, the defendant does not contend on appeal that he lacked notice of the hearing in damages that occurred as a result of his default. Even if the defendant had appeared at the hearing in damages, however, he would not have been able to contest liability. See Practice Book § 17-34 (a) ("[i]n any hearing in damages upon
 default, the defendant shall not be permitted to offer evidence to contradict any allegations in the plaintiff's complaint, except such as relate to the amount of damages, unless notice has been given to the plaintiff of the intention to contradict such allegations ... nor shall the defendant be permitted to prove any matter of defense, unless written notice has been given to the plaintiff of the intention ... to prove such matter of defense"); Practice Book § 17-35 ("The notices required by [§] 17-34 shall be [made in compliance with the rules governing service of pleadings in civil actions].... [N]otice of defenses must be filed within ten days after notice from the clerk to the defendant that a default has been entered."). Accordingly, having failed to provide the proper notice of his intention to contradict the plaintiff's allegations or to present a defense, the defendant cannot establish that he would have had a proper defense at the hearing in damages.
 

 Second, the record reveals that the defendant's absence at the hearing in damages was the result of his own failure to exercise due diligence. See
 
 Jacobs
 
 v.
 
 Fazzano
 
 ,
 
 59 Conn.App. 716
 
 , 724,
 
 757 A.2d 1215
 
 (2000) ("[d]ue diligence is a necessary condition to success in prosecuting a [motion] for a new trial"). Again, the defendant does not claim on appeal that he lacked
 
 notice
 
 of the hearing in damages.
 

 Furthermore, the trial court indicated at the hearing in damages that it believed that the defendant could have taken the necessary steps to attend the hearing: "I'll note for the record, [the defendant] had the opportunity to be here. He didn't file a [m]otion for a [h]abeas to bring him in. He had done so in the past. So, he's fully aware of the ability to do that." Indeed, the record reveals that the defendant previously had filed an application for a writ of habeas corpus ad testificandum requesting transportation to court for oral argument on his motion to dismiss. Thus, the
 trial court reasonably
 could have concluded that the defendant knew how to arrange for his appearance in court and that his failure to do so with respect to the hearing in damages resulted from him not acting diligently.
 
 [12]
 

 Accordingly, we conclude that the trial court did not abuse its discretion in denying the defendant's motion for a new trial.
 

 The judgment is affirmed.
 

 In this opinion the other judges concurred.
 

 Raffy's Café I, LLC, doing business as Raffy's Café, and Rafael Robles also were cited as party defendants in this action, but they are not involved in this appeal. Therefore, we refer to Bennett as the defendant in this opinion.
 

 The defendant does not present his challenge to the denial of his motion to dismiss as the first claim in his brief. However, because that motion implicates subject matter jurisdiction, we address the denial of his motion as a threshold issue.
 

 Raffy's Café and Robles moved for summary judgment on these two counts, and the trial court granted their motion.
 

 A writ of habeas corpus ad testificandum is "[a] writ used in civil and criminal cases to bring a prisoner to court to testify." Black's Law Dictionary (10th ed. 2014).
 

 We note that the defendant's "sovereign immunity" claim more resembles a "sovereign citizen" argument than a traditional invocation of sovereign immunity. "The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior."
 
 United States
 
 v.
 
 Ulloa
 
 ,
 
 511 Fed.Appx. 105
 
 , 106 n.1 (2d Cir. 2013). "Th [is] defense has no conceivable validity in American law." (Internal quotation marks omitted.)
 
 United States
 
 v.
 
 Jonassen
 
 ,
 
 759 F.3d 653
 
 , 657 (7th Cir. 2014), cert. denied, --- U.S. ----,
 
 136 S.Ct. 152
 
 ,
 
 193 L.Ed.2d 114
 
 (2015).
 

 Noting that "[t]he defense of collateral estoppel is a civil law analogue to the criminal law's defense of double jeopardy"; (internal quotation marks omitted)
 
 Wiacek Farms, LLC
 
 v.
 
 Shelton
 
 ,
 
 132 Conn.App. 163
 
 , 167 n.4,
 
 30 A.3d 27
 
 (2011), cert. denied,
 
 303 Conn. 918
 
 ,
 
 34 A.3d 394
 
 (2012) ; the trial court also addressed whether the principles of collateral estoppel deprived the court of jurisdiction. We conclude that the court's determination that "collateral estoppel ... is not a ground to challenge the court's subject matter jurisdiction" was correct. See, e.g.,
 
 State
 
 v.
 
 T.D.
 
 ,
 
 286 Conn. 353
 
 , 360 n.6,
 
 944 A.2d 288
 
 (2008) ("[T]he doctrine of collateral estoppel does not implicate a court's subject matter jurisdiction.... Even when applicable, therefore, collateral estoppel does not mandate dismissal of a case." [Citations omitted.] ).
 

 Practice Book § 17-42 provides in relevant part: "A motion to set aside a default where no judgment has been rendered may be granted by the judicial authority for good cause shown ...."
 

 Practice Book § 17-32 (b) provides in relevant part: "If a [defendant] who has been defaulted under this section files an answer before a judgment after default has been rendered by the judicial authority, the default shall automatically be set aside by operation of law unless a claim for a hearing in damages ... has been filed."
 

 Raffy's Café and Robles successfully moved for summary judgment on the counts directed at them that sounded in dram shop liability and reckless service of alcohol. They had argued that they were not liable for Brown's death because it was undisputed that they did not serve the defendant alcohol on the night of the stabbing. The defendant apparently agreed to provide them with an affidavit wherein he attested to, in pertinent part, the following: "On July 10, 2009, I was the owner of 159 Springdale Avenue, Meriden, Connecticut.... Raffy's Café is located directly adjacent to 159 Springdale Avenue, Meriden, Connecticut, with only a small driveway separating the properties.... In the roughly three- to four-hour period before 11:30 p.m. on July 10, 2009, I had been hanging out in the parking area of 159 Springdale Avenue.... At no time did I enter Raffy's Café on July 10, 2009.... At no time did anyone from Raffy's Café serve alcohol to me on July 10, 2009."
 

 The defendant's pleading that requested a new trial was entitled "
 
 Petition
 
 for a New Trial." (Emphasis added.) The trial court, however, characterized the pleading as a
 
 motion
 
 for a new trial. Although the defendant called the pleading "Petition for a New Trial," "[w]hen a case requires the court to determine the nature of a pleading, courts are not required to accept the label affixed by the moving party."
 
 Redding
 
 v.
 
 Elfire, LLC
 
 ,
 
 98 Conn.App. 808
 
 , 818,
 
 911 A.2d 1141
 
 (2006). After reviewing the record, we conclude that the pleading was "the functional equivalent of a motion, not a petition." Id., at 816,
 
 911 A.2d 1141
 
 ; see also id., at 819-20,
 
 911 A.2d 1141
 
 (pleading called "petition for a new trial" was properly treated as motion for new trial where pleading, although served upon adverse party, was not filed in separate action and was denied rather than dismissed by trial court). Specifically, we note: (1) the defendant did not serve the pleading upon the plaintiff by writ and complaint; (2) the defendant did not commence a separate proceeding by filing it in a new action instead of the action for which he was seeking a new trial; and (3) the trial court treated it as a motion by referring to it as a "motion" and by denying it rather than dismissing it.
 

 As explained in more detail below, we address the defendant's allegations of fraud and newly discovered evidence together because the gravamen of the defendant's claim is that he acquired
 
 newly discovered evidence of fraud
 
 .
 

 For instance, the defendant asserts that the phone records call into doubt whether he was present at the time of the stabbing. Regarding the medical examiner's report, the defendant claims that the state suppressed seven pages wherein it was supposedly concluded that Brown's cause of death was a gunshot wound. Furthermore, he asserts that the allegedly suppressed emergency calls demonstrate that the arrest warrant omitted that an emergency caller reported that she (1) saw someone other than the defendant push Brown during the altercation; (2) heard a gunshot; and (3) saw and heard someone other than the defendant make a phone call after the stabbing and admit to killing Brown.
 

 The defendant has not identified any authority imposing a duty on the court to arrange for an incarcerated self-represented party's appearance in a civil matter by issuing, sua sponte, a writ of habeas corpus ad testificandum. Likewise, we are unaware of any such authority. We do note, nevertheless, that the decisional law appears to suggest that no such duty exists.
 

 In
 
 McDuffee
 
 v.
 
 McDuffee
 
 ,
 
 39 Conn.App. 412
 
 ,
 
 664 A.2d 1164
 
 (1995), an incarcerated party in postjudgment dissolution proceedings claimed that the trial court's refusal to grant her a continuance for child custody hearings violated her due process rights. Id., at 415,
 
 664 A.2d 1164
 
 . In rejecting this claim, this court reasoned: "[The appellant] confuses her own inaction in failing to arrange to be present or to provide testimony at the hearing with an affirmative action by the trial court denying her the right to be present. This is a private custody dispute, and the court did nothing to prevent the [appellant] from appearing. The record is devoid of any indication that the [appellant] availed herself of any of the procedures that would have allowed her to provide evidence or to be present." (Emphasis omitted; footnote omitted.) Id., at 416,
 
 664 A.2d 1164
 
 . We noted that procedures that the appellant could have used in securing her appearance at the hearings included "seek[ing] a writ of habeas corpus ad testificandum." Id., at 416,
 
 664 A.2d 1164
 
 n.5. See also
 
 In re J.F.
 
 ,
 
 113 S.W.3d 698
 
 , 701 (Mo. App. 2003) ("[a] ... court is not obligated to order, sua sponte, an inmate's appearance at a hearing in a civil case [to which he is a party]" [internal quotation marks omitted] ); cf.
 
 Muhammad
 
 v.
 
 Warden, Baltimore City Jail
 
 ,
 
 849 F.2d 107
 
 , 111-12 (4th Cir. 1988) ("Ideally, ... a [party] should be present ... [because] [n]ot only the appearance but the reality of justice is obviously threatened by his absence. The law recognizes this of course, but it also recognizes that there are countervailing considerations of expense, security, logistics, and docket control that prevent according prisoners any absolute right to be present.");
 
 In re Colburn
 
 ,
 
 30 Ohio St.3d 141
 
 , 141-42,
 
 507 N.E.2d 1138
 
 , 1139-40 (1987) ("[t]he rule advanced here and elsewhere governing issuance of the writ [of a habeas corpus ad testificandum] in civil actions is that a litigant, including a [self-represented] prisoner, whether plaintiff or defendant, does not have an absolute right to issuance of the writ" [footnote omitted] ).